UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ANGELA SYMINGTON, | * | |
| | * | JURY DEMAND |
| Plaintiff, | * | |
| | * | NO. _____ |
| vs. | * | |
| | * | |
| SHANER OPERATING CORP. d/b/a | * | |
| CHATTANOOGA MARRIOTT | * | |
| DOWNTOWN | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

Comes Angela Symington ("Plaintiff"), through her attorneys, and sues Shaner Operating Corp. d/b/a Chattanooga Marriott Downtown ("Defendant") for damages and injunctive relief for unlawful employment actions pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* and the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 (collectively "ADAAA"), 42 U.S.C. § 12101, *et seq.* For her Complaint, Plaintiff would show unto the Court as follows.

### I. JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's FMLA claims and ADA claims, which present federal questions pursuant to 28 U.S.C. §1331.

2. The actions giving rise to this Complaint occurred in Hamilton County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. §1391.

### II. NATURE OF PROCEEDING

3. This is a proceeding for back pay; reinstatement or front pay in lieu of reinstatement; the value of all employee benefits; compensatory damages, including damages for

humiliation and embarrassment; liquidated damages; interest; attorney fees and costs; punitive damages; and for such additional damages as may be necessary to effectuate the purposes of the FMLA and the ADAAA.

### III. THE PARTIES

4. Plaintiff is a resident of Hamilton County, Tennessee.

5. Defendant is a Delaware Corporation authorized to do business in the State of Tennessee and is an "employer" within the meaning of all relevant statutes asserted herein. Defendant's Chattanooga operation employs more than 75 full time employees. Additionally, Defendant operates 42 properties across the United States.

### IV. FACTUAL BASIS OF PLAINTIFF'S CLAIMS

6. Plaintiff was employed by Defendant from 2010 through June 6, 2016. Her last job with Defendant was as a Sales Coordinator. Her supervisor was Mary Childress.

7. During Plaintiff's employment, she was praised for her work abilities and ethic.

8. That praise waned as she began to exercise her rights under the Family and Medical Leave Act.

9. Plaintiff first used FMLA leave in late 2012 for her own serious health condition. During that time, she used a brief period of continuous FMLA leave.

10. Plaintiff was then required to utilize FMLA in 2013 when her husband, Scott Symington, was seriously injured in a motor vehicle accident.

11. Following that, in 2014, Plaintiff used a small amount of continuous FMLA leave for her own serious health condition.

12. In late 2014, Mr. Symington was diagnosed with Glioblastoma Multiform (GBM) Grade IV, the most aggressive form of brain cancer. After being treated locally with no success,

Mr. Symington began undergoing clinical trials at Duke University.

13. GBM is a disability as defined by the ADAAA. Mr. Symington ultimately passed away due to GBM in March of 2017.

14. Further, his condition and need for care met the definition of serious health condition as defined in the FMLA.

15. As a result of her husband's aggressive cancer, Plaintiff requested intermittent FMLA leave in December of 2014. Due to his condition, he could not drive to treatments and also needed care during and after them.

16. Defendant was aware of Plaintiff's husband's disability and serious health condition.

17. Plaintiff and her husband lived in Soddy Daisy, Tennessee and they had to travel 430 miles to Duke for the clinical trials.

18. Ms. Childress made numerous negative comments about Plaintiff's need for FMLA leave.

19. For example, Ms. Childress would ask Plaintiff, "how much more FMLA leave will you need?" in a demeaning tone of voice.

20. Ms. Childress also quizzed Plaintiff when she needed FMLA about why her husband's family could not take him to Duke so that Plaintiff could continue working.

21. Ms. Childress also made disparaging comments to other employees, outside of Plaintiff's presence, about Plaintiff's FMLA leave. For instance, if Plaintiff missed a staff meeting due to her FMLA leave, Ms. Childress would explain to others in a negative tone, "its that husband thing again."

22. Additionally, Plaintiff was criticized by Ms. Childress in performance appraisals

for her use of FMLA leave.

23. Upon information and belief, Plaintiff was not the only employee who was treated negatively due to her FMLA leave.

24. Plaintiff's husband was scheduled to travel to Duke for a treatment on May 24-26. Plaintiff requested FMLA for those days and also scheduled a vacation day for May 27, which was a Friday, through June 3, 2016, using her PTO for the latter. Plaintiff had ample vacation time saved and the leave was approved.

25. Plaintiff had never been advised by Defendant as to how travel time was treated under its FMLA policy (i.e.-if treatment began Tuesday whether she could have leave on Monday for travel).

26. Plaintiff reported to work on Monday, May 23. That morning, Plaintiff asked if she could take half of that day off from work so that she and her husband could get on the road for Duke and be well rested prior to the commencement of Mr. Symington's May 24 treatment.

27. Ms. Childress would not approve the leave. Nonetheless, Plaintiff left work at 2:00 after all of her daily duties had been completed and it would not burden Defendant, and clocked out accordingly.

28. Upon Plaintiff's return, she was written up for leaving on May 23 without approval. During the meeting in which Plaintiff was given the write up, Ms. Childress said, "we've been tolerant of you being on FMLA two times in the past." Ms. Childress was very upset and said that in a very negative manner. Plaintiff was given a write up, which Plaintiff felt was inappropriate and thus she did not want to sign it. As a result, Ms. Childress and the HR representative asked Plaintiff if she was quitting. Plaintiff said she was not. In the meeting, an HR representative participated and asked if Plaintiff wanted to take a personal leave of absence

to deal with "all of this." Although Plaintiff could not afford such a leave, she said she would consider it and made clear she did not wish to quit. The HR representative instructed Plaintiff not to report to work while HR consulted with the general manager and while Plaintiff considered whether she could agree to take the suggested leave. In communications with HR at that time, Plaintiff complained about the negative comments Ms. Childress made concerning her FMLA leave.

29. Plaintiff was then contacted by the Vice President of HR, who told her it would be best if she resigned. Plaintiff refused. Shortly thereafter, Plaintiff received a Separation Agreement proposed by Defendant.

30. As a result, Plaintiff was constructively or actually terminated by Defendant.

31. The adverse employment actions taken against Plaintiff and the hostility to which she was exposed were because of her association with her husband, an individual with a disability, and her need for FMLA leave related to the same were negative factors in the various employment decisions made by Defendant.

32. As a result, Plaintiff has suffered significant damage.

33. At all times Defendant acted willfully and/or with reckless disregard for Plaintiff's rights under the FMLA and ADAAA.

34. The negative FMLA actions were continuing violations.

## V. STATEMENT OF CLAIMS

**COUNT 1: FMLA INTERFERENCE**

35. Defendant interfered with Plaintiff's right to take FMLA qualifying leave, as reflected in the above paragraphs, including, but not limited to preventing and discouraging Plaintiff from take time off intermittently to care for her husband, who had a serious and terminal

Page 5 of 9
Case 1:17-cv-00234-TRM-CHS   Document 1   Filed 08/28/17   Page 5 of 9   PageID #: 5

medical problem, and then by terminating her because she had taken FMLA qualifying time off from work. Further, Defendant denied Plaintiff's right to take FMLA for travel for treatment.

36. Defendant's interference with Plaintiff's FMLA rights violated the Family and Medical Leave Act.

37. The effect of the Defendant's actions has been to deprive Plaintiff of income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, and caused her to incur other monetary losses because of her having taken FMLA qualifying leave.

38. As such, Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury from the Defendant's acts of interfering with her FMLA rights.

39. Therefore, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the law.

40. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

41. Plaintiff is further entitled to liquidated damages for the violations of her civil rights under the FMLA, 29 U.S.C. § 2601, et seq.

**COUNT 2: RETALIATION FOR TAKING FMLA LEAVE**

42. Defendant retaliated against Plaintiff for taking intermittent FMLA leave to care for her seriously ill husband, as reflected in the above paragraphs, including but not limited to preventing or discouraging Plaintiff from taking time off from work intermittently to care for her husband, who had a serious and terminal health condition, treating her negatively for the same, exposing her to a hostile environment due to the same, and ultimately terminating her due to the same. Defendant also retaliated against Plaintiff for complaining about the negative comments

her supervisor made to her about FMLA leave.

43. Defendant's retaliatory actions violated the Family and Medical Leave Act.

44. The effect of the Defendant's actions has been to deprive Plaintiff of income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to her, and caused her to incur other monetary losses because of her having taken FMLA qualifying time off from work.

45. As such, Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury from the Defendant's acts of retaliating against her for engaging in activities protected by the FMLA.

46. Therefore, Plaintiff is entitled to both equitable and monetary relief for the Defendant's violation of the law.

47. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

48. Plaintiff is further entitled to liquidated damages for the violations of her civil rights under the FMLA, 29 U.S.C. § 2601, et seq.

**COUNT 3: DISCRIMINATION UNDER THE ADAAA BECAUSE OF PLAINTIFF'S ASSOCIATION WITH HER HUSBAND, WHO WAS AN INDIVIDUAL WITH A DISABILITY**

49. Plaintiff's husband was an individual with a disability as defined by the ADAAA.

50. The Defendant discriminated against Plaintiff because of her association with her husband, as reflected in the above paragraphs, who was known to have a disability and then by terminating her due to the burden her husband's disability created for Defendant.

51. Defendant's actions violated the ADAAA.

52. The effect of the Defendant's actions has been to deprive Plaintiff of income in the form of wages, health insurance, prospective retirement benefits, social security, and other

Page 7 of 9
Case 1:17-cv-00234-TRM-CHS   Document 1   Filed 08/28/17   Page 7 of 9   PageID #: 7

benefits due to her, and caused her to incur other monetary losses because of Defendant's discrimination against Plaintiff for her association with her husband who had serious medical problems and a disability.

53. As such, Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury from the Defendant's acts of discrimination against her because of her association with her husband who had serious medical problems and a disability.

54. Therefore, Plaintiff is entitled to both equitable and monetary relief for the Defendant's violation of the law.

55. Furthermore, Plaintiff has suffered and will continue to suffer emotional distress as a result of Defendant's actions.

56. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

57. Plaintiff is further entitled to compensatory damages for the violations of her civil rights under the ADAAA.

58. Plaintiff filed a timely charge of discrimination with the EEOC and received a Notice of Right to Sue dated July 24, 2017. This Complaint has been timely filed within 90 days of receipt of the Right to Sue.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That upon hearing of this cause Plaintiff be awarded judgment for damages as a result of Defendant's discriminatory action;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal condition imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement;

d. That Plaintiff be awarded compensatory damages, including damages for humiliation and embarrassment, and emotional distress;

e. That the Plaintiff be awarded liquidated damages;

f. That Plaintiff be awarded pre-judgment interest;

g. That Plaintiff be awarded punitive damages;

h. That Plaintiff be awarded attorney fees, including fees and expenses, and such other and further relief as the Court deems proper; and

i. Plaintiff demands a jury to try all claims and issues triable by a jury.

BURNETTE, DOBSON & PINCHAK

By:___s/ *Donna J. Mikel*_____
  Donna J. Mikel, #020777
  711 Cherry Street
  Chattanooga, TN 37402
  Phone: (423) 266-2121
  Fax: (423) 266-3324
  Email: dmikel@bdplawfirm.com